UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Bray International, Inc.,                                        Civil No. 05-1618 (PAM/AJB)

                            Plaintiff,

v.                                                              **MEMORANDUM AND ORDER**

Raymond A. Collings,

                            Defendant.

───────────────────────────────────────────────────

This matter is before the Court on Plaintiff Bray International, Inc.'s Motion for

Reconsideration of the June 23, 2006 Order, which dismissed a common law fraud claim

against Defendants Raymond A. Collings and Jon K. Heidinger.  For the reasons that follow,

the Court grants the Motion.[1]

**BACKGROUND**

Bray International, Inc. ("Bray") manufactures actuators and valves.  Between August

1995 and October 2002, Technical Industrial Sales, Inc. ("Technical") was the exclusive

distributor of Bray products in Minnesota, the Dakotas, and parts of Michigan and

Wisconsin.  Collings is the sole shareholder of Technical and chairman of its board of

directors.

A sales policy governed the distributorship relationship.  To ensure that Technical met

customer demand, the policy recommended that Technical maintain excess inventory.  (See

───────────────────────

[1] In its June 23, 2006 Order, the Court dismissed the fraud claims against both Collings and
Heidinger.  However, Bray seeks reconsideration of only the claim against Collings.

Aug. 21, 2006 Hyman Aff. Ex. N (establishing a guideline that distributors maintain at least seventeen percent, or two months, of the projected twelve month sales of Bray product).) In addition, Bray allowed Technical to purchase products for select, high-volume customers at discount prices.

Bray's common law fraud claim is based on allegations that Technical employees, acting at the behest of Collings, purchased products at the high-volume discount prices, carried the products as general inventory, and then sold the product to customers ineligible for discount pricing. Bray also alleges that Technical employees regularly and systematically falsified invoices by misrepresenting the true purpose of the orders or misrepresenting the identity of the end customer. As a result of this alleged scheme, Technical purportedly increased its profit margin by inducing Bray to sell products to Technical at prices lower than Bray would have otherwise charged.

Collings previously moved for judgment on the pleadings relating to the fraud claim. Although discovery had not closed, the Court considered the motion as one for summary judgment because the parties submitted evidence outside of the pleadings. (See June 23, 2006 Order at 2-3 (citing Fed. R. Civ. P. 12(c)).) Based on the record presented, the Court determined that the fraud claim failed as a matter of law because Bray had failed to allege who made a false statement. (Id. at 5.) In addition, the Court found that the evidence on which Bray relied did not support a fraud claim. (Id. at 5-6.)

Bray now asks the Court to reconsider its dismissal of the fraud claim against Collings. Bray maintains that it recently obtained evidence directly implicating Collings in

2

the fraud scheme.  In support of its motion, Bray submitted an Affidavit of Byron Kuss, the

former head of Technical's inside sales department.  In his June 30, 2006 Affidavit, Kuss

explained that he was responsible for processing orders received from Technical customers

and placing orders with Technical suppliers.  (June 30, 2006 Kuss Aff. ¶ 2.)  He also stated

that Collings ordered him to create "dummy" purchase orders.  Specifically, he averred:

> Mr. Collings regularly instructed me and other inside sales employees,
> including Margaret White, Scott Sloan and Jess Granlund,[2] to order as much
> Bray product as possible pursuant to the special pricing agreements.  For a
> long time we were successful in ordering product from Bray pursuant to
> special pricing agreements without furnishing Bray with copies of a
> customer's purchase order to [Technical].  However, when Bray would
> demand [Technical] furnish a copy of a customer's purchase order to
> [Technical], per Mr. Collings instruction, we would create "dummy" purchase
> orders.  Sometimes we "whited out" the price on customer purchase orders
> submitted to Bray so that [Technical] could charge customers eligible for the
> special price discounts at prices higher than those agreed upon between Bray
> and [Technical] for such customers.

(Id. ¶ 4.) With his Affidavit, Kuss provided several copies of invoices that he modified by

"whiting out" the price.  (Id.)

In opposition, Collings submitted a second Affidavit of Kuss dated July 21, 2006.  In

that Affidavit, Kuss recanted most statements made in his previous Affidavit.  In particular,

he stated:

> I am unaware of any fraud scheme by Technical or its employees.  I recall no
> specific instance in which Collings instructed me or anyone else at Technical

---

[2] In his response, Collings provided affidavits of Scott Sloan and Jess Granlund; both attested
that they had little or no contact with Collings during their employment with Technical.  (See
Granlund Aff. ¶ 2; Sloan Aff. ¶ 2.) However, neither denied creating "dummy" purchase
orders.

3

to purchase products from Bray at special discounts but then sell those products to customers ineligible for special pricing discounts. I did not make any false statements to Bray.

. . .

I recall no instance in which I falsified a purchase order.

. . .

I did not modify the customer purchase orders attached to my earlier Affidavit, and I do not recall any instance in which I modified a purchase order. When Technical employees purchased product from Bray, they did so to make sure they had inventory on hand to meet customer demand. I do not know where the invoices attached to my Affidavit came from, why prices appear to be whited-out, or what effect this would have on anyone looking at the invoice.

(July 21, 2006 Kuss Aff. ¶¶ 3, 5-6.)

## DISCUSSION

### A.     Standard of Review

Summary judgment is proper when the evidence viewed in a light most favorable to the nonmoving party demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, only disputes of facts that might affect the outcome of the suit under the governing substantive law will preclude summary judgment. Id. The moving party bears the burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to all inferences that may be reasonably drawn from the underlying facts in the record. Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 992-93 (8th Cir. 2003). However, the nonmoving party may

4

not merely rest upon allegations or denials in its pleadings — it must set forth specific facts showing that there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 256.

**B.    Fraud**

Common law fraud encompasses intentional misrepresentation.  <u>Iverson v. Johnson Gas Appliance Co.</u>, 172 F.3d 524, 529 (8th Cir. 1999); <u>Dvorak v. Maring</u>, 285 N.W.2d 675, 678 n.4 (Minn. 1979) ("we see no distinction between a theory of recovery based on intentional misrepresentation and one based on fraud").  To state a claim for intentional misrepresentation under Minnesota law, a plaintiff must allege that: (1) the defendant made a false misrepresentation about a past or present material fact that was susceptible of knowledge; (2) the defendant knew the misrepresentation was false or asserted it as of his own knowledge without knowing whether it was true or false; (3) the defendant intended to induce the plaintiff to act and the plaintiff was indeed induced to act; and (4) the plaintiff acted in reliance on the representation and was thereby damaged.  <u>M.H. v. Caritas Family Servs.</u>, 488 N.W.2d 282, 289 (Minn. 1992) (citing <u>Florenzano v. Olson</u>, 387 N.W.2d 168, 174 n.4 (Minn. 1986)).  A corporate officer may be liable for fraud committed by the corporation's employees if the officer participated in the fraud, directed the employees to commit the fraud, or was negligent in failing to learn of and prevent the fraud.  <u>Avery v. Solargizer Int'l, Inc.</u>, 427 N.W.2d 675, 681 (Minn. Ct. App. 1988) (citing <u>Morgan v. Eaton's Dude Ranch</u>, 239 N.W.2d 761, 762 (Minn. 1976)).  However, a corporate officer who took no part in a fraudulent scheme cannot be liable for acts of other employees, agents, or officers.  <u>Id.</u>

The Court is extremely concerned about the blatant inconsistencies in the Affidavits. "No party should be allowed to create 'issues of credibility' by contradicting his own previous testimony." See City of St. Joseph v. Sw. Bell Tel., 439 F.3d 468, 476 (8th Cir. 2006) (quoting Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1366 (8th Cir. 1983)). In the July 21, 2006 Affidavit, Kuss baldly denies his previous testimony. The July 21, 2006 Affidavit is a sham, and the Court will not consider it. See Davis v. City of St. John, No. 05-2956, 2006 WL 1519636 at *1 (8th Cir. 2006) (district court properly struck affidavit filed in response to a motion for summary judgment that directly contradicted earlier deposition testimony).

In his June 30, 2006 Affidavit, Kuss admits that he altered purchase order invoices, and avers that Collings ordered him to do so. These statements complete the record the Court previously found lacking. In particular, Bray has presented evidence that Collings directed several Technical employees to submit false purchase orders to Bray to increase Technical's profit margins. In addition, the Affidavit identifies the time frame during which the alleged fraud took place, the nature and content of the fraudulent misrepresentations, and the manner in which the fraudulent misrepresentations were carried out. The Affidavit provides sufficient details of the alleged fraud scheme, and Bray has presented sufficient evidence to create a dispute of material fact on the common law fraud claim.

**CONCLUSION**

The Court has significant concerns about the veracity of Byron Kuss. Given the procedural posture, however, the Court is not in the position to judge his credibility. The

June 30, 2006 Affidavit provides sufficient details to set forth a common law fraud claim and creates a dispute of material fact as to the viability of that claim.   Accordingly, **IT IS HEREBY ORDERED** that:

1.    Plaintiff Bray International, Inc.'s Motion for Reconsideration (Docket No. 82) is **GRANTED**;

2.    Defendant Raymond A. Collings's Motion for Judgment on the Pleadings with Respect to Plaintiff's Common Law Fraud claim (Docket No. 31) is **DENIED**; and

3.    The Common Law Fraud claim against Defendant Raymond A. Collings, which the Court previously dismissed, is now **REINSTATED**.

Dated: September 20, 2006

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge